IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES M. WORTHEM,

    Plaintiff,

    v.                                         No. 3:08-cv-385-DRH

MS. JOHNSON, I-A MacDONALD, LT.
BRADLEY, and MR. DALLAS,

    Defendants.

MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

    This action comes before the Court on a motion for summary judgment filed by defendants Jason Bradley, Alan Dallas, Yolande Johnson, and Richard MacDonald (Doc. 76). For the reasons set forth below, the motion is **GRANTED**.

## I.    Procedural History

    On April 22, 2008, plaintiff, James Worthem, then an inmate in the Illinois Department of Corrections (IDOC), filed a complaint in the United States District Court for the Northern District of Illinois pursuant to 42 U.S.C. § 1983, alleging that various IDOC officials had failed to protect him from an assault by two other inmates. The action was transferred to this district on May 28, 2008 (Doc. 7). The Court appointed counsel to assist plaintiff on October 10, 2008 (Doc. 16). Upon threshold review of the amended complaint (Doc. 15), the Court allowed

plaintiff to proceed on his failure-to-protect claim against defendants Bradley, Dallas, Johnson, and MacDonald, but dismissed all other claims and defendants (Doc. 23).

The case proceeded through discovery, and on August 2, 2010, defendants filed the pending motion for summary judgment. Plaintiff did not file a response to the motion within 30 days, as required by SDIL-LR 7.1(c), nor did plaintiff ask for an extension of time to respond to the motion. On September 20, 2010, plaintiff filed a *pro se* motion for a status update, informing the Court that he had been unable to contact his attorney. After receiving no response to the motion for summary judgment by plaintiff's appointed counsel, the Court entered an order to show cause on November 15, 2010, ordering plaintiff's counsel to show cause by November 22, 2010, why the Court should not grant summary judgment in favor of defendants because plaintiff did not respond to the motion (Doc. 84). On November 22, 2010, plaintiff's counsel filed a response to the motion for summary judgment, conceding that defendants were entitled to judgment in their favor (Doc. 85). In light of this response, on November 24, 2010, the Court granted defendants' motion for summary judgment and entered judgment in favor of the defendants and against plaintiff (Docs. 86 and 87).

On February 8, 2011, plaintiff filed a *pro se* motion to withdraw appointment of counsel (Doc. 89) and a *pro se* motion to vacate judgment and reinstate the case (Doc. 90). In these two motions, plaintiff informed the Court that his attorney had not contacted him since May 2010. He further related that plaintiff's father

contacted appointed counsel who told plaintiff's father that the case had been dismissed. Plaintiff had not been informed by his attorney of the dismissal. Plaintiff asked the Court to reopen the "erroneously closed" case. Over the objection of the defendants, the Court granted plaintiff's motion to reopen the case, reinstated the motion for summary judgment filed in August 2010 (Doc. 95), and appointed a new attorney to represent plaintiff (Doc. 96). After several extensions of time to complete discovery, plaintiff, through his new attorney, has now responded to the motion for summary judgment.[1] The motion is ripe for the Court's review.

## II. Factual Background

In 2005, plaintiff James Worthem assisted the FBI as a confidential informant. Specifically, he "wore wires" in drug buys, then testified about the transactions to a grand jury. The targets of the FBI investigation were eventually convicted (Doc. 77-1, Ex. A, Plaintiff's Deposition, pp. 9-10).

In May of 2007, plaintiff was taken into IDOC custody on a parole violation (Pl. Depo., p. 11). He arrived at Pinckneyville Correctional Center on June 22, 2007 (Pl. Depo., p. 11). Later that day in the chow hall, an IDOC inmate named Padilla threatened harm to plaintiff because of his cooperation with the FBI (Pl. Depo., pp. 11-12). Plaintiff informed Pinckneyville officials of the threat. On June 23, 2007, from a photo line-up arranged by Internal Affairs officer defendant

---

[1] Plaintiff concedes that evidence supports the dismissal of defendant Dallas. Thus, the merits of plaintiff's claims against defendant Dallas will not be discussed further. Judgment should be entered against defendant Dallas accordingly at the close of the case.

MacDonald, plaintiff chose a photo of inmate Padilla as the inmate who threatened him (Pl. Depo., p. 13).  On the same day, defendant MacDonald told plaintiff he would investigate the threats (Pl. Depo., p. 14).  On June 25, 2007, defendant MacDonald showed plaintiff additional photos and asked him to identify other inmates with Padilla in the chow hall (Pl. Depo., p. 14).  On June 27, 2007, inmate Padilla threatened plaintiff again (Pl. Depo., p. 15).  Plaintiff informed defendant Bradley of the threats.  Defendant Bradley agreed to investigate (Pl. Depo., pp. 15-16).  On July 13, 2007, inmate Padilla and another inmate, Mercado, threatened plaintiff in the prison yard (Pl. Depo. pp. 18-19).  On July 14, 2007, inmate Mercado and other unidentified inmates threatened plaintiff at his cell (Pl. Depo., p. 19).  On the evening on July 14, 2007, an unidentified Internal Affairs officer informed plaintiff that phone calls and "kites" had been intercepted indicating plaintiff was in danger (Pl. Depo., p. 20).  In the early morning of July 15, 2007, plaintiff was called to Internal Affairs where defendant MacDonald informed him that he was to be transferred from Pinckneyville on an emergency basis (Pl. Depo., p. 21).  In the afternoon of July 15, 2007, plaintiff returned to Internal Affairs where defendant Johnson told him to pack up his things because he was being transferred.  Defendant MacDonald told plaintiff he had contacted the FBI regarding the threats (Pl. Depo. p. 21-22).  On July 15, 2007, plaintiff was transferred from Pinckneyville to segregation at Lawrence Correctional Center (Pl. Depo., p. 23).  On July 16, 2007, plaintiff met with defendant Dallas of Internal Affairs at Lawrence.  Dallas informed plaintiff that he would remain housed in

segregation until Pinckneyville had completed its investigation (Pl. Depo., p. 23). On July 25, 2007, in anticipation of a court writ in Skokie, Illinois, plaintiff was removed from his cell and transferred by bus to Logan Correctional Center (Pl. Depo., p. 24). Logan Correctional Center is the "transfer pad" for inmates traveling by bus among IDOC institutions (Pl. Depo., p. 24). On July 25, 2007, while waiting for a transfer bus at Logan, inmates Padilla and Mercado, along with other unidentified inmates, attacked plaintiff (Pl. Depo., p. 27).

In response to the motion for summary judgment, plaintiff points out that the threat against him was not limited to the inmates who attacked him, but was a gang-wide and perhaps nation-wide threat from the "Latin Folks," who were aware that plaintiff wore a wire and assisted in prosecuting high-ranking gang members. Plaintiff contends that his level of cooperation was unusual. Defendant MacDonald stated in deposition that he had not "interviewed somebody or had contact with an inmate, to my knowledge, that has worn a wire" (Doc. 112-1, Ex. A, MacDonald Deposition, pp. 13-14). Plaintiff urges that the defendants knew plaintiff had a "death violation" out on him, meaning that gang forces would kill plaintiff if they had the chance (MacDonald Depo., pp. 33).[2] MacDonald also

---

[2] In answer to questions from plaintiff's counsel, McDonald testified as follows:

> Q: Well, in your report, per at least a couple of the inmates you interviewed, James had a, quote, death violation, closed quote, on him.
>
> A: That's what he said.
>
> Q: Well, I thought that was what Padilla said too.

speculated that gang members communicate between prisons: "I'm sure that [the Latin Folks] get information from one place to another. That can come in a variety of ways, through visits, sending mail out, coded messages, that kind of stuff." Finally, MacDonald testified that after plaintiff was transferred out of Pinckneyville, "He was gone, so as far as I was concerned, the threat to [Worthem] at Pinckneyville Correctional Center was no longer" (MacDonald Depo., p. 34).

Defendant Bradley testified in deposition that generally after an Internal Affairs investigation is completed, if a legitimate threat is found, Internal Affairs informs clinical services, which adds the names of the threatening inmates to the threatened inmate's "Keep Separate From" (KSF) list. Bradley testified that the Internal Affairs investigation regarding threats to plaintiff was completed on July 15, 2007. Bradley testified that the latest date Internal Affairs would have made a recommendation to clinical services for changing of plaintiff's KSF list was July 15 or 16, 2007 (Doc. 115-1, p. 2; Bradley Depo., pp. 22-24). Plaintiff submits his IDOC KSF list, which indicates that Felipe Padilla, Jeremy Colanto, Angel Mercado, and Isaac Pena were added to the list on July 25, 2007, approximately ten days after Internal Affairs completed its investigation and made recommendations for

---

A: Okay. Could very well be.

. . .

Q: Based upon your experience, background and training, what does a, quote, death violation, closed quote, mean?

A: That would mean to me that if they had the opportunity, that they would kill the individual.

(McDonald Depo., p. 33.)

additions to plaintiff's KSF list (Doc. 112-3, Exh. C).

Defendant Johnson testified that usually names are entered on the KSF list immediately after the conclusion of the disciplinary process or at the time the threat becomes known, but when an inmate is transferred to another prison due to security concerns, there may be some delay in adding names to an inmate's KSF list. If an inmate is transferred out of the facility, "the entire documentation process could have taken days rather being done immediately" (Doc. 112-2, Ex. B, Johnson Depo, pp. 49-50). Defendant Johnson further testified that if the inmates had been on each other's KSF lists, they should have been separated.

### III.   Summary Judgment Standard

Under FEDERAL RULE OF CIVIL PROCEDURE 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); s*ee also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City*

*of Springfield, Illinois Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence."  *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); s*ee also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).  A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving's party case necessarily renders all other facts immaterial." *Id.*

    The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).  The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of

material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

### IV.   Constitutional Standard

Prison officials have a duty under the Eighth Amendment, "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To succeed on a failure-to-protect claim, an inmate must first demonstrate, objectively, that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A beating of one inmate by another "clearly constitutes serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Second, he must show that prison officials acted with deliberate indifference to that risk, a subjective inquiry into a prison official's state of mind. *Farmer*, 511 U.S. at 838-39. As explained in *Farmer*, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive

risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner must demonstrate that prison officials were aware of a specific, impending and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)). The prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. An official who knows of a substantial risk of serious harm is free from liability, however, if he or she "responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005).

A showing of negligence, or even gross negligence, is insufficient to prove an official acted with deliberate indifference. The standard is the "equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)).

### V. Discussion

Based on the evidence presented at this stage of the litigation, the Court finds that plaintiff has not made his *prima facie* case demonstrating a constitutional violation. The parties do not contest that plaintiff has made a sufficient showing under the objective inquiry that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Plaintiff fails,

however, to demonstrate that defendants acted with deliberate indifference to that risk.

At summary judgment, the burden is on the moving party to establish that no genuine issue of material fact exists to submit to a jury or that the moving party is entitled to judgment as a matter of law. Defendants have submitted evidence showing that the day after plaintiff made his initial complaint of the threat by inmate Padilla, officer MacDonald began a Pinckneyville Internal Affairs investigation. After plaintiff was threatened again by inmates Padilla and later Mercado, he was removed from the general population and placed in segregation for his protection. The next day, plaintiff saw defendants Johnson, MacDonald, and Bradley, who told him their investigation had revealed that he was in danger, and would be moved to a safe place. The next day he was transferred out of Pinckneyville. Thus, defendants Johnson, MacDonald, and Bradley were each involved in investigating the threats made against plaintiff, determining that plaintiff faced a risk of harm, and transferring him to another institution. Based on the evidence submitted by defendants, not only were the defendants *not* deliberately indifferent to the risk of harm, they each acted to mitigate the potential harm.

To survive summary judgment, plaintiff must come forth with evidence demonstrating a genuine issue for trial. Even in considering these facts in the light most favorable to the plaintiff, plaintiff has failed to do so. None of the facts highlighted by plaintiff demonstrate that any defendant acted with the state of mind

necessary to constitute deliberate indifference. Defendant MacDonald testified that he was aware that plaintiff had "worn a wire," and acknowledged that MacDonald had never worked with an inmate who had been so deeply involved in an investigation. MacDonald also testified in deposition that he was told there was a "death violation" out on plaintiff, and that gang members housed in different prisons are able to communicate with each other. MacDonald testified that after the investigation was completed and plaintiff was sent to another facility, he believed his job to be completed. Prison officials are not required to respond to potential threats by unknown individuals outside of the prison. Even if they were, unless a prison official knows of a specific threat, his transferring plaintiff to another facility where he might be housed with an inmate who might threaten him is too attenuated to hold MacDonald or any other defendant liable. As noted in *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and he must also draw the inference." *Id.* at 837. Moreover, the Seventh Circuit has held that a prison official will not be held liable where he responded reasonably to a known threat. *See Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005). MacDonald had no knowledge that plaintiff and inmates Padilla and Mercado would be at the transfer pad at Logan. Thus, at most, his actions would reflect negligence, which is not actionable under Section 1983.

Defendants Bradley and Johnson testified that usually after an investigation is completed, Internal Affairs notifies clinical services, which then adds the names

of threatening individuals to a threatened inmate's KSF list. The evidence shows that the Pinckneyville investigation was completed on July 15, 2007, when plaintiff was transferred to Lawrence. The KSF list itself shows that the threatening inmates were not added to plaintiff's KSF list until July 25, 2007, after the assault had already occurred. Defendant Bradley testified that the latest clinical services would have been notified was July 16, 2007. The disconnect between finding a legitimate threat and placing the names of the threatening inmates on plaintiff's KSF list is not attributable to any defendant because to their knowledge clinical services would have entered the names within a short time after the notification from Internal Affairs.[3] Under such a factual scenario, none of the defendants could have acted recklessly to the risk of harm because they had no knowledge that the process was delayed. Without a showing of such knowledge, plaintiff cannot demonstrate deliberate indifference.

The Court recognizes that ideally the assault would not have occurred at all, but the assault alone does not violate the constitution. To rise to the level of a constitutional violation, well-established precedent requires a showing that a named defendant acted with deliberate indifference to a known risk. Plaintiff has not made that required showing. Plaintiff's quarrel may be with the IDOC itself for failing to maintain thorough oversight of potential threats during transport between and among facilities. None of these defendants, however, can be held liable for

---

[3] Defendant Johnson testified in deposition that additions to the KSF list could take days or could occur immediately.

that failure to better control and transfer process

## VI. Conclusion

Based on all the foregoing, the Court finds that plaintiff has failed to demonstrate an essential element of his *prima facie* case. Accordingly, summary judgment must be granted in defendants' favor. *See Celotex*, 477 U.S. at 323. The motion for summary judgment filed by defendants Jason Bradley, Alan Dallas, Yolande Johnson, and Richard MacDonald (Doc. 76) is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Signed this 27th day of March, 2012.

David R. Herndon
2012.03.27
21:10:13 -05'00'

**Chief Judge**
**United States District Judge**